IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JANET PALEK, RICHARD PALEK,<br><br>    Plaintiffs,<br><br>    v.<br><br>STATE FARM FIRE & CASUALTY COMPANY,<br><br>    Defendant. | 2:20-CV-00170-CCW |

**MEMORANDUM OPINION AND ORDER**

**I.     Introduction**

Before the Court is Defendant State Farm Fire and Casualty Company's Motion to Dismiss for Failure to State a Claim. ECF No. 22. On September 15, 2020, Janet and Richard Palek ("Plaintiffs") filed their Second Amended Complaint, ECF No. 21, asserting three state law claims: (1) equitable reformation of contract; (2) bad faith insurance practices under 42 P.S. § 8371; and (3) unfair trade practices under 73 P.S. § 201 *et seq*. The Court's jurisdiction in this case is based on diversity of citizenship. 28 U.S.C. § 1332(a); ECF No. 21 at ¶¶ 3–6. For the reasons that follow, Defendant's Motion will be GRANTED.

**II.    Background**

Plaintiffs allege that Defendant misled them about the kinds of damage to their in-ground swimming pool that a homeowner's insurance policy (the "Policy"), which Plaintiffs purchased in 1999 when they bought their home and pool, would cover. *See* ECF No. 21. at ¶¶ 8–9, 28–29. Specifically, Plaintiffs allege that Defendant's agent informed them at the time Plaintiffs first purchased the Policy that the Policy would "cover their in ground [sic] pool in the event the [pool] was damaged from foreseeable types of harm." *Id.* at ¶ 13. However, Plaintiffs aver that they

were unaware—and Defendant's agent did not disclose—that the Policy would not cover damage to the pool caused by subsurface water movement. *See id.* at ¶¶ 14, 18–19, 27. Plaintiffs claim that they relied on Defendant's general assurance that foreseeable harm to their pool would be covered, when they decided to purchase the Policy and in renewing it annually, believing that the Policy "covered their swimming pool." *Id.* at ¶ 14.

Plaintiffs allege that the damage to their pool was the result of hydrostatic pressure,[1] which can cause an empty in-ground pool to "act[] as a boat which seeks to float," forcing the pool liner up and out of the ground. *Id.* at ¶ 18. This kind of event, called a "pool pop," results in costly damage to the pool. *Id.* at ¶¶ 17–18, 26. Plaintiffs allege that pool pops are common risks known in the insurance and swimming pool industries, and that Defendant knew of such risks, having denied claims for similar occurrences under policies like the one Plaintiffs purchased. *Id.* at ¶¶ 17–19.

Plaintiffs allege that on June 11, 2018, during routine maintenance, their pool experienced a pool pop, resulting in over $70,000 in damage. *Id.* at ¶ 16–17, 26. Plaintiffs contend that they reported the damage to Defendant immediately, but Defendant denied the claim on the basis that the Policy did not cover damage caused by earth movement or subsurface water. *Id.* at ¶ 25. Plaintiffs claim that had they known of the risk of pool pops, and that the Policy Defendant offered did not cover damage caused by such events, they would have selected another policy, an additional rider, or sought coverage through another carrier. *Id.* at ¶ 29. Defendant's Motion seeks to have Plaintiff's claims dismissed entirely.

---

[1] Hydrostatic pressure is defined as "pressure exerted by or existing within a liquid at rest with respect to adjacent bodies." "Hydrostatic pressure." *Merriam-Webster.com Dictionary* (accessed Apr. 16, 2021).

### III.     Procedural History

In their First Amended Complaint, ECF No. 10, Plaintiffs asserted claims for breach of contract and bad faith insurance practices under 42 Pa.C.S. § 8371.  *See* ECF No. 10.  Defendants moved to dismiss, ECF No. 11, and the Honorable Joy Flowers Conti granted that motion, holding (1) that Plaintiffs' breach of contract claim was barred by a one-year suit limitation and, furthermore, was precluded by the unambiguous text of the Policy and (2) that Plaintiffs failed to state a claim for bad faith insurance practices under 42 Pa.C.S. § 8371 because coverage was barred under the plain language of the Policy and because Plaintiffs "did not plead sufficient facts to support a cognizable claim of bad faith for failure to conduct an adequate investigation." *See* ECF No. 19 at 7, 12, 14–15.  The Court granted Plaintiffs leave to amend to attempt to cure the deficiencies identified with respect to their bad faith insurance practices claim, only. *See id.* at 15.

In their Second Amended Complaint, Plaintiffs seek to have the Court reform the Policy on equitable grounds so that the Policy would cover damage for pool pops. *See* ECF No. 22 at ¶ 39.  Plaintiffs also claim that Defendant committed bad faith insurance practices under 42 Pa.C.S. § 8371 by failing to inform Plaintiffs about either the foreseeability of pool pops or about the Policy's lack of coverage for these events.  *Id*. at ¶ 44.  Finally, Plaintiffs allege that Defendant's failure to inform them about these same facts constitutes unfair trade practices under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201 *et seq*.

Defendant moved to dismiss the Second Amended Complaint.  *See* ECF No. 22.  Subsequently, the case was transferred to the undersigned*,* s*ee* ECF No. 26, and Defendant's Motion is now ripe for disposition.

**IV.     Standard of Review**

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a claim. In reviewing a motion to dismiss, the court accepts as true a complaint's factual allegations and views them in the light most favorable to the plaintiff. *See Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d. Cir. 2008). Although a complaint need not contain detailed factual allegations to survive a motion to dismiss, it cannot rest on mere labels and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, "a formulaic recitation of the elements of a cause of action will not do." *Id.* Accordingly, "[f]actual allegations must be enough to raise a right to relief above the speculative level," *id.*, and be "sufficient to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than the sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

The United States Court of Appeals for the Third Circuit has established a three-step process for district courts to follow in analyzing a Rule 12(b)(6) motion:

> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)).

**V.      Discussion**

Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332(a). *See* ECF No. 21 at ¶¶ 3–6. Accordingly, the Court will apply the substantive law of the forum state, Pennsylvania, in resolving Defendant's Motion. *See Spence v. ESAB Group*, 623 F.3d

212, 216 (3d Cir. 2010) (noting that "as a federal court sitting in diversity, we are required to apply the substantive law of the state whose law governs the action.") (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)).

> **A.  The Second Amended Complaint Fails to State a Claim for Equitable Reformation**

Defendant argues that Plaintiffs' claim in Count I, for equitable reformation of the Policy, should be dismissed for failure to plead mutual mistake or fraud in contract formation.  The Court agrees.

Reformation is "an equitable remedy that is sparingly granted." *Twin City Fire Ins. Co. v. Pittsburgh Corning Corp.*, 813 F.Supp. 1147, 1149 (W.D. Pa. 1992).  Reformation of a written instrument is available when the instrument is "at variance with the terms of the parties' original agreement" in order to give effect to "the true agreement of the parties." 1 Corbin on Pennsylvania Contracts § 28.11 (2020).  Accordingly, equitable reformation is available where there was mutual mistake by both parties or where one party wrongfully exploits the other party's unilateral mistake. *Easton v. Washington Cty. Ins. Co.*, 137 A.2d 332, 337 (Pa. 1957).

Mutual mistake exists where there is "a mistake in which each party misunderstands the other's intent," or "a mistake that is shared and relied on by both parties to a contract." *Regions Mortg., Inc. v. Muthler*, 889 A.2d 39, 41 (Pa. 2005) (citing Black's Law Dictionary 1023 (8th ed. 2004)).  Unilateral mistake, on the other hand, requires that the non-mistaken party acted with sufficient knowledge of the other party's mistake as to permit an inference of fraud or bad faith. *Regions Mortg.*, 889 A.2d at 41 (citing *Dudash v. Dudash*, 460 A.2d 323 (Pa. Super. 1983)). However, "where the contested policy provisions are clear and unambiguous," Pennsylvania law does not impose a general duty on insurance agents to "'anticipate and then counsel their insured on the hypothetical, collateral consequences of the coverage chosen.'" *Kilmore v. Erie. Ins. Co.*,

5

595 A.2d 623, 626 (Pa. Super. Ct. 1991) (quoting *Banker v. Vall. Forge Ins. Co.*, 526 A.2d 434, 438 (Pa. Super. Ct. 1987)).

On the other hand, under certain circumstances, Pennsylvania courts will apply the so-called reasonable expectations doctrine as grounds for judicial reformation of an insurance contract. "An analysis of the reasonable expectation of the insured is rightly employed when a claimant alleges that the insurer engaged in deceptive practices toward the insured . . . to issue a policy different from the one requested." *West v. Lincoln Ben. Life Co.*, 509 F.3d 160, 169 (3d Cir. 2007). Pennsylvania courts draw a crucial distinction, however, between situations where the insurer's unilateral changes "result[] in a policy quite different from what the insured requested" and those where the insured "received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for." *Tonkovic v. State Farm Mut. Auto. Ins. Co.*, 521 A.2d 920, 925 (Pa. 1987). In the latter case, the clear text of the policy must prevail. *See Standard Venetian Blind Co. v. American Empire Ins. Co.*, 469 A..2d 563, 566 (Pa. 1983) ("[I]n the absence of proof of fraud, 'failure to read [the contract] is an unavailing excuse or defense and cannot justify an avoidance, modification or nullification of the contract or any provision thereof.'") (citation omitted).

Plaintiffs do not appear to ground their equitable reformation claim on mutual mistake. Rather, Plaintiffs appear to be proceeding on a theory of unilateral mistake, as the Second Amended Complaint alleges that Defendant had superior knowledge about pool pops and had denied such claims under policies like the one Plaintiffs held. ECF No. 21 at ¶¶ 19, 34. Thus, to survive Defendant's Motion, the Second Amended Complaint must plead facts sufficient to show that Defendant knew of Plaintiffs' mistaken beliefs about the Policy and exploited this mistake to sell the Policy.

Plaintiffs assert that they requested insurance for "all reasonably foreseeable types of harm" to the home and included structures. ECF No. 21 at ¶ 31. They allege that Defendant informed them that the Policy "would provide them protection for the same." *Id.* at ¶ 32. Defendant allegedly made this representation despite knowing of the common risk of pool pops. *Id.* at ¶¶ 19, 33. Plaintiffs assert that they were unaware of the possibility of pool pops or the resulting repair costs when they purchased the Policy. *Id.* at ¶¶ 18, 19, 33. These allegations are insufficient, however, because they do not allege that the Defendant had any knowledge of Plaintiffs' mistaken belief about the scope of coverage under the Policy, let alone knowledge sufficient to infer fraud or bad faith. Plaintiffs do not allege that Defendant knew of their specific unawareness of pool pops, or of their alleged inexperience in the common costs and risks associated with owning an in-ground swimming pool. Plaintiffs also do not plead facts sufficient to show that Defendants unilaterally limited the policy beyond clauses that are the "usual incident" of coverage for swimming pools. *Tonkovic*, 521 A.2d at 925. Thus, because Plaintiffs do not allege that Defendant knew of Plaintiffs' mistake, and because Pennsylvania law imposes no affirmative duty on insurers to investigate potential sources of customer's confusion about express policy terms, the Complaint does not sufficiently plead an equitable reformation claim based on unilateral mistake. *See West*, 509 F.3d at 168 (discussing Pennsylvania law and noting "[t]o allow the insured 'to avoid application of the clear and unambiguous policy limitations in these circumstances would [have required the Supreme Court] to rewrite the parties' written contract,' which the court would not do.") (quoting *Standard Venetian Blind*, 469 A.2d at 566).

Furthermore, we reach a similar conclusion applying an analysis of the insured's reasonable expectations. Plaintiffs allege that they requested coverage for their swimming pool for foreseeable types of harm. ECF No. 21 at ¶¶ 11, 13, 31–32. The Defendant provided

7

swimming pool coverage in the Policy, including the water damage exclusion that prevented recovery for the pool pop event. *See id.* at ¶¶ 15, 25. Under *Tonkovic*, the crucial question is whether the water damage exclusion was a usual incident of coverage, or a clause that created a policy quite different from what Plaintiffs requested. The Second Amended Complaint does not allege that a water damage exclusion is unusual in a policy covering swimming pools, or that one specific type of exclusion changed the basic nature of the homeowners' policy, or that Plaintiffs specifically requested coverage for pool pops which Defendant then unilaterally excluded. *See Frederick Mut. Ins. Co. v. Hall*, 752 Fed.Appx. 115, 118–19 (3d Cir. 2018) (overturning district court's application of reasonable expectations doctrine where plaintiff "did not apply for the specific type of insurance coverage he now claims that he expected as he asked in general terms for 'soup to nuts' coverage through a broad term that was not specific."). In other words, Plaintiffs offer no facts to distinguish the water damage exclusion from any other usual exclusion clause that appears in any other homeowners' insurance policy.

For these reasons, Plaintiffs' claim for equitable reformation in Count I of the Second Amended Complaint will be dismissed. However, because Plaintiffs' equitable reformation claim was not raised before this case was transferred to the undersigned and, therefore, the Court has not previously ruled on said claim, Plaintiffs will be granted leave to amend to attempt to cure the deficiencies identified above.

**B.     The Second Amended Complaint Fails to State a Claim for Bad Faith Insurance Practices under 42 Pa.C.S. § 8371,** *et seq.*

Next, Defendant argues that Plaintiffs' claim in Count II, for bad faith insurance practices under 42 Pa.C.S. § 8371, *et seq.*, should be dismissed because the statute does not permit a claim

based on representations made by the insurer before or during the sale of an insurance contract.[2] The Court agrees.

Pennsylvania law allows policyholders to collect interest on unpaid claims, punitive damages, court costs, and attorney fees if "the insurer has acted in bad faith toward the insured." 42 Pa. C.S. § 8371.  The statute's scope is limited, however, to "actions an insurer took when called upon to perform its contractual obligations of defense and indemnification of a loss." *Toy v. Metro. Life Ins. Co.*, 928 A.2d 186, 199 (Pa. 2007).  The statute does not create a cause of action for a policyholder "who alleges that his insurer engaged in unfair or deceptive practices in soliciting the purchase of a policy." *Id.* at 200.  In other words, § 8371 "encompasses a variety of insurer conduct, but such conduct must be related to the denial of benefits," not "'[mere] disputes over contract terms.'" *Velazquez v. State Farm Fire & Cas. Co.*, 2020 U.S. Dist. LEXIS 55854 at *26 (E.D. Pa. March 27, 2020) (citing *UPMC Health Sys. v. Metro. Life Ins. Co.*, 391 F.3d 497, 506 (3d Cir. 2004)).

Plaintiffs allege that the Defendant acted in bad faith when it made representations about the scope of coverage under the Policy. *Id.* ¶¶ 41–44.  Plaintiffs assert that they relied on these representations before purchasing the Policy. *Id.* at ¶ 14.  They contend that Defendant also acted in bad faith by continuing to collect premiums from 1999 to 2018, despite allegedly misrepresenting the coverage provided under the Policy.  ECF No. 21 at ¶¶ 45–46.  These allegations do not fall within the scope of 42 Pa. C.S. § 8371, because they allege bad faith only in soliciting the purchase and renewal of the Policy.  Because the legislature "intended not to give

---

[2] Plaintiffs brought a claim for bad faith insurance practices in Count II of the First Amended Complaint.  ECF No. 10.  At that time, Plaintiffs alleged that Defendant committed bad faith insurance practices when it denied Plaintiffs' 2018 insurance claim after conducting only a cursory investigation of the property.  *Id*. at ¶¶ 14–15, 17, 26.  Judge Conti dismissed the claim because Plaintiffs did not plead facts sufficient to support their claim that Defendant lacked a reasonable basis for denying the claim.  ECF No. 19 at 14–15.  Judge Conti granted Plaintiffs leave to amend the complaint to offer more specific facts, but Plaintiffs have abandoned their "insufficient investigation" claim in the Second Amended Complaint and now pursue a new theory of Defendant's alleged bad faith practices.

relief under the bad faith statute to an insured who alleges that his insurer engaged in unfair or deceptive practices in soliciting the purchase a policy," *Toy*, 928 A.2d at 198, Plaintiffs' bad faith claims under § 8371 fail as a matter of law.

For these reasons, Count II of the Second Amended Complaint will be dismissed. Furthermore, because the theory of liability asserted by Plaintiffs here is not cognizable under 42 Pa. C.S. § 8371, *see Toy,* 928 A.2d at 198, amendment of this claim would be futile and no leave to amend will be granted.

### C. The Second Amended Complaint Fails to State a Claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law

Finally, Defendant argues that Plaintiff's claim in Count III, for deceptive practices under Pennsylvania's UTPCPL, 73 P.S. § 201 *et seq.*, should be dismissed for failure to plead facts showing justifiable reliance on Defendant's conduct. The Court agrees.

The UTPCPL creates a cause of action for consumers who suffer loss as a result of unfair or deceptive acts or practices. 73 P.S. § 201-9.2(a). The statute enumerates several specific unfair acts or practices and also contains a "catch-all" provision, 73 P.S. § 201-2(4)(xxi), which includes "any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." A plaintiff alleging deceptive conduct under the catch-all provision need only allege conduct with "the potential to deceive and which creates a likelihood of confusion or misunderstanding." *Gregg v. Ameriprise Fin., Inc*., 245 A.3d 637, 649 (Pa. 2021). That said, a plaintiff must establish that he justifiably relied on the defendant's conduct to satisfy the causation requirement under § 201-9.2(a), regardless of the type of unfair conduct alleged. *Id.* at 646.

Importantly, UTPCPL plaintiffs do not enjoy a presumption of justifiable reliance. *See, e.g., Hunt v. U.S. Tobacco*, 538 F.3d 217 (3d. Cir. 2008) (rejecting plaintiff's assertion that reliance is presumed under UTPCPL as contrary to Pennsylvania law); *see also Toy*, 928 A.2d at 202 ("a

plaintiff alleging violations of the Consumer Protection Law must prove justifiable reliance"). Although justifiable reliance is "typically a question of fact for the fact-finder to decide, and requires a consideration of the parties, their relationship, and the circumstances surrounding their transaction," *Toy,* 928 A.2d at 208, "a court may determine, even at the motion to dismiss stage, that a plaintiff's allegations of justifiable reliance fail as a matter of law." *Plumber's Local Union No. 690 Health Care Plan v. Apotex Corp.,* Civil Action No. 16-665*,* 2017 U.S. Dist. LEXIS 156443, at *22 (E.D. Pa. Sep. 25, 2017) (citing *Hunt*, 538 F.3d at 227). Furthermore, Pennsylvania courts "hesitate to find reliance justified where the party claiming reliance had an adequate opportunity to verify" allegedly deceptive statements. *Porreco v. Porreco*, 811 A.2d 566 (Pa. 2002) (affirming judgment for defendant accused of fraudulent misrepresentations). Finally, "[t]o be justifiable, reliance on the representation of another must be reasonable." *Id.* at 571.

In the context of insurance, justifiable reliance raises the question of whether policyholders have a duty to read and understand their policies. Because insurance companies often have superior knowledge during negotiations, courts do not impose a duty on policyholders to pore over their written policies to discover fraudulent misrepresentations. *See, e.g., Toy*, 928 A.2d at 207 ("the recipient of an allegedly fraudulent misrepresentation is under no duty to investigate its falsity in order to justifiably rely"); *Tran v. Metro. Life Ins. Co.*, 408 F.3d 130, 136–37 (3d Cir. 2005) ("Pennsylvania does not impose a duty to read insurance policies when insureds allege fraud"). Where there is no allegation of fraud, however, whether a policyholder has a duty to read the policy depends on whether, under the circumstances, it is unreasonable not to read it. *Rempel v. Nationwide Life Ins. Co.,* 370 A.2d 366, 369 (Pa. 1977).

Plaintiffs' claim under the UTPCPL fails because, viewed in the light most favorable to Plaintiffs, the facts as alleged in the Second Amended Complaint cannot support justifiable

reliance. Plaintiffs allege that they "specifically informed State Farm that they had an in-ground swimming pool and that they desired coverage of the same." ECF No. 21 at ¶ 11. According to Plaintiffs, Defendant's agent informed them "that the insurance they were purchasing would in fact cover their in-ground pool in the event the same was damaged from foreseeable types of harm." *Id.* at ¶ 13. Plaintiffs allege that this statement by Defendant's agent was misleading because the Policy did not cover pool pops, which Plaintiffs aver is a common and foreseeable type of damage to in-ground swimming pools. *See id.* at ¶¶ 19–20. But, despite receiving only vague assurances about the coverage provided under the Policy, Plaintiffs appear to have made no effort whatsoever to ascertain the actual scope of coverage under the Policy. *See* ECF No. 21 at ¶ 55.

As alleged, Defendant's representation is too vague for reliance on it to be reasonable. *See Porreco*, 811 A.2d at 571 ("To be justifiable, reliance on the representation of another must be reasonable."). There is no allegation here that Defendant ever made any affirmative representations about coverage under the Policy for pool pops, or subsurface earth or water movement, or any other kind of damage. Indeed, as alleged, Defendant did not even represent that the Policy would provide coverage for "all" foreseeable harms or even "reasonably" foreseeable harms. As such, it is objectively unreasonable for a consumer in Plaintiffs' position to rely, without further inquiry, on an unadorned representation that an insurance policy will provide coverage for "foreseeable" types of harm for the simple reason that such a representation says nothing about what is or is not "foreseeable."

Furthermore, this case is readily distinguishable from cases where courts have found that a fact-finder could determine, or a fact-finder has indeed concluded, that an insured's reliance on an insurer's representations about a policy was justifiable. For example, in *Toy*, plaintiff allegedly

relied on an insurance agent's representation that a policy would accrue a cash value of $100,000 by the time plaintiff turned 65, when, in fact, the policy itself stated it would only have a cash value of $11,008.86. *See* 928 A.2d at 189–190. Likewise, in *Gregg*, defendant's agent made specific representations that "if the Greggs purchased the new Policy and made annual payments, the Policy would accrue significant cash value that they could use to fund their retirement." 2021 Pa. LEXIS 608, at *4. Unbeknownst to plaintiffs, however, defendant's agent was not making contributions to plaintiffs' savings accounts as promised. *Id.* at *5. In both cases, the defendant made specific representations about the features or benefits of the policy at issue, making the plaintiffs' reliance on those representations reasonable.

Here, Defendant's alleged representations told Plaintiffs almost nothing about the coverages provided by the Policy. As such, and given the lack of specific description of the coverages provided, it cannot be reasonable for Plaintiffs to have relied on Defendant's alleged vague representation that the Policy covered "foreseeable" damage, without more.

Accordingly, Count III of the Second Amended Complaint will be dismissed. However, as with Count I, because Plaintiffs' UTPCPL claim was not raised before this case was transferred to the undersigned and, therefore, the Court has not previously ruled on said claim, Plaintiffs will be granted the leave to amend to attempt to cure the deficiencies identified above.

## VI. Conclusion

For the foregoing reasons, Defendant's Motion to Dismiss is hereby GRANTED as follows:

1. Count I for equitable reformation is DISMISSED WITHOUT PREJUDICE;
2. Count II for bad faith practices under 42 Pa.C.S. § 8371 is DISMISSED WITH PREJUDICE;

      3. Count III for violation of 73 P.S. § 201 *et seq.* is DISMISSED WITHOUT PREJUDICE.

On or before May 5, 2021, Plaintiffs may file a Third Amended Complaint to attempt to cure the deficiencies identified above with respect to Counts I and III of the Second Amended Complaint, only. In light of the fact that, before this case was transferred to the undersigned, Plaintiffs had two prior opportunities to amend their pleadings, any Third Amended Complaint should be Plaintiffs' last, best effort, as no further leave to amend will be granted.

    DATED this 21st day of April, 2021.

    BY THE COURT:

                                          /s/ Christy Criswell Wiegand
                                          CHRISTY CRISWELL WIEGAND
                                          United States District Judge

cc (via ECF email notification):

All Counsel of Record